ANGELA JONES, Justice,
specially concurring.
On the 13th day of April, this matter comes on for hearing and is properly before this Court pursuant to Title 26 CNCA § 37 as amended by LA-04-14.
The Appellant, Julia Coates appeals from an adverse ruling of the Cherokee Nation Election Commission on March 20, 2015, determining that she does not meet the qualifications to be a candidate for Deputy Chief in the 2015 Cherokee Nation General Election. Appellees, Jodie Fishin-ghawk and Carole Richmond asked the commission to declare that Julia Coates was not a qualified candidate for the office of Deputy Chief because she had not established a bona fide permanent residence within the boundaries of the Cherokee Nation for no less than 270 immediately preceding the day of the Cherokee Nation General Election for 2015. At the hearing held by the Election Commission on March 20, 2015, the commission denied her eligibility to run for Deputy Chief and provided written notice thereof, Coates brought timely appeal before this Court.
This Court has jurisdiction to review the decisions of the Cherokee Nation Election Commission pursuant to Title 26 CNCA § 37. On appeal, the statute gives the candidate who is the subject of the challenge, the third party challenging the finding of eligibility and the Election Commission the right to present testimony of witnesses, present evidence and make legal arguments. The court reviews this matter de novo. Mayes JAT-Q3-06 (2003); Demoss JAT-03-05 (2003)
The Court has received, reviewed and considered the record made before the Election Commission including all exhibits received by the Commission. In addition the Court heard additional testimony of the parties and witnesses and received and considered all other exhibits admitted in the hearing held before this Court.
The evidence clearly established that the Appellant has maintained two residences. One is located in Tahlequah, Oklahoma, within the boundaries of the Cherokee Nation and one being located in Los Angeles, California, outside the boundaries of the Cherokee Nation.
The evidence presented in support of Coates’ qualification included, the following: A transcript of an Interview dated August 7, 2013 wherein Coates’ states “... and I’ve been fighting ever since to try and find the way to stay there. And it’s not easy,” Warranty Deed dated October 20, 2008, of the property located at 215 W. Delaware, Tahlequah, Oklahoma, Tax information for the West Delaware Property, TPWA bills for billing periods ending 7/15/2014 & 8/15/2014, cable bill dated *158 8/6/2104, Lease Agreement dated May 10, 2010, for Coates’ rental property located at 401 West 4th Street, Tahlequah, Oklahoma, Coates’ Cherokee Nation automobile registration, Coates’ Oklahoma Driver’s License issued on June 21, 2012, Coates’ Cherokee Nation Registration eard listing the West Downing address, Coates’ Cherokee County Voter registration issued 3/3/2015 listing the West Downing address, Coates’ Voter Registration Application listing the West Downing address, Coates’ Cherokee County voting history, Coates’ 2014 IRS Tax Return, filed on March 11, 2015, listing P.O. Box 1968, Tahlequah, Oklahoma as her mailing address, Check written on Coates’ Bank of America account for her filing fees showing the P.O. 1968, Tahlequah, OK as her address, Coates’ 2011 & 2012 W2s with the Tahleq-uah post office box address, documents showing her separation of employment from UCLA date as June 30, 2014, and her last paycheck being issued June 30, 2014, a typed list of items that Coates keeps at the West Downing address, pictures taken of her house at the West Downing address, an affidavit of service showing she was personally serviced with a legal document at her West Downing address on March 15, 2015, and copy of her birth certificate.
Title 26 CNCA § 35 2 states that
Verification of residence may be shown by at least three (3) of the following documents, provided always that such documents show one or more addresses within the required geographic area for a continuous period of 270 days for the time-period outlined in the requirements for each elective office.
A. Current Driver’s Lieense(s), Utility bill or bills,
B. Income Tax Return from the preceding year.
C. State or county voter’s registration
D. Homestead exemption.
E.A bona fide document evidencing such verification.
(emphasis added)
■While the Court acknowledges that Coates has provided the minimum documents as set forth in Title 26 CNCA § 35 2, the candidate’s burden is not necessarily met by simply showing that one or more of the factors exist. Mayes, JAT 03-06 (2003) The Court in Mayes, went on to state “Although such factors are probative, they are never independently dispositive on the issue of residence and domicile. Such factors must be reviewed in light of the specific circumstances in each case.”
The Court recognizes that the right of an individual to run for office is a fundamental right and as such, a decision to deny one of that right should strictly scrutinized. At the same time, in 1995, the Cherokee people overwhelmingly passed a referendum amending the Constitution in a 10,111 to 1,457 vote, establishing the residency requirement for Principal and Deputy Chief. The Mayes Court also gave a specific warning to all future candidates:
This Court is mindful of the seriousness of this matter and urges extreme caution to all candidates, present and future, in their compliance with the will of the Cherokee People as manifest in the residency requirements. In the 1995 referendum, the people clearly intended that their representatives live among them and experience life, first hand, as experienced by the Cherokees who reside within the Cherokee Nation. (emphasis added)
The Court must look to more than just a list of documents. The independent actions and words of a person can speak volumes and can show more than any standard document. It is the Courts opinion that the actions and words of Coates over *159 whelmingly established the fact that Los Angeles was her domicile.
In June 28 2013, Coates sent an email to Speaker Jordan stating: “Thus my employment with UCLA is no longer temporary and I will be staying in Los Angeles for the long term. The position begins July 1, 2013, Therefore, in accordance with Tribal Council travel policies . these travel expenses should no longer continue to be charges to my ‘elective travel.’ ” These statements clearly shows an express intent on the part of Coates in June 2013 that her domicile, wherever it may have been prior to June 2013, that as of June 28, 2013, she considered it to be Los Angles, California. Her words and actions after that time further support this fact.
The following is a list the travel reimbursements submitted by Coates from July 2013 through December 2014:
July 2013 requested and received “Official” travel reimbursement from Los Angeles to Tahlequah to attend July Committee Meetings, in addition she received reimbursement for a rental car, gas for a rental car and also received a per diem for July 12, 13, 14, 15 & 16, 2013.
August 2013 requested and received “Official” travel reimbursement from Los Angeles to Tahlequah to attend August Committee Meetings, in addition she received reimbursement for a rental car, gas for a rental car and also received a per dime for August 9, 10, 11, 12, 13.
Cherokee National Holiday 2013 requested and received “Official” travel reimbursement from Los Angeles to Tahlequah to attend the Cherokee National Holiday Events for 2013, in addition she received reimbursement for a rental car, gas for a rental car and also received a per dime for August 28, 29, 30, 31 and September 1 & 2, 2013.
September 2013 requested and received “Official” travel reimbursement from Los Angeles to Tahlequah to attend September Committee Meetings.
October 2013 Regular Meeting requested and received “Official” travel reimbursement from Los Angeles to Tahleq-uah to attend the October Meetings, in addition she received reimbursement for a rental car.
October 2013 Special Meeting requested and received “Official” travel reimbursement from Los Angeles to Tahlequah to attend the Special October Meeting. December 2013 requested and received “Official” travel reimbursement from Los Angeles to Tahlequah to attend Tribal Council Meetings [1]
February 2014 requested and received “Official” travel reimbursement from Los Angeles to Tahlequah to attend Tribal Council Meeting.
March 2014 requested and received “Official” travel reimbursement from Los Angeles to Tahlequah to attend Tribal Council Meeting.[2]
April 2014 requested and received “Official” travel reimbursement from Los An-geles to Tahlequah to attend Tribal Council Meeting.
June 2014 requested and received “Official” travel reimbursement from Los An-geles to Tahlequah to attend Tribal Council Meeting.[3]
*160 August 2014 requested and received “Official” travel reimbursement from Los Angeles to Tahlequah to attend the 2014 Cherokee National Holiday.
October 2014 requested and received “Official” travel reimbursement from Los Angeles to Tahlequah to attend November Council Meeting.
December 2014 requested and received “Official” travel reimbursement from Los Angeles to Tahlequah to attend Tribal Council Meeting.
The Tribal Council’s Travel Expense Policy provides “Travel to attend council meetings from any temporary relocation for jobs does not constitute Official Travel.” (emphasis added) It is clear not only from the email but also from Coates travel claims that she did not view her residence in Los Angeles as a temporary relocation for her job but viewed it as permanent. This intent is evidenced by her repeated submission, classification and receipt of reimbursement of her travel expense from Los Angeles to Tahlequah from July 2013 through December 2014.[4] Additionally, not only did Coates submit and receive travel reimbursement classified as “official travel to and from Los Angles to Tahleq-uah, on several occasions during this period, she received a per diem payment when she was in Tahlequah. The Tribal Council Expense policies categorize expenses into two categories, Actual Expenses and Per Diem Expenses. Under Per Diem, it is further broken down into lodging expense and Meal & Incidental Expense (M & IE), under the policy the M & IE is available when traveling away from home in connection with their business-related travel. There was never any request for reimbursement of travel to any council meeting or monthly committee meeting between July 1, 2013, and December 2014, wherein Coates classified the travel as anything except “Official” travel. Coates’ actions show that the location Coates always returned to when she was away was not the West Downing address in Tahlequah, but Los Angeles California.
On the Cherokee Nation 2013-2017 Tribal Council Official contact list Coates’ address was listed as P.O, Box 34337, Los Angeles, California, which according to a Response pleading filed by Coates, was a valid Post Office Box until on or about August 1, 2014. Then on September 5, 2014, Coates sent an email to Shelli Brit-tain, a tribal council employee informing her that her address was 1715 Camden Avenue, Apt 201, Los Angeles, CA. She then sent another email reiterating this fact to Gayle Miller, another tribal council employee, and further verified that it should be listed as her contact list for the public. This address is also the mailing address listed on her TPWA account.
Argument has been made to the Commission and this Court that implies that the fact that Coates merely rented an apartment in Los Angeles but owned and maintained a house in Tahlequah was somehow a significant fact. Coates leased an apartment at 3265 South Beverly Drive, Los Angeles California, from January 15, 2013, through June 2013, then she executed a one-year lease for an apartment in Los Angeles at 1715 Camden Avenue Apt 201, Los Angeles, California, on August 28, 2014. The precedent is clear that even a motor home can be used to qualify as one’s domicile. Demoss, JAT-03-05 (2008) Furthermore, appellee in Mayes prevailed in overcoming a challenge to his candidacy by establishing that a one unit duplex apart *161 ment rented on a month-to-month basis without a written lease can be sufficient to classify as a domicile for the purposes of the residency requirement, even though he owned a home that his wife and children lived in outside the boundaries of the Cherokee Nation. The Court, in this case must look at all of the circumstances take as a whole, not just the ones that are advantageous to the candidate, just as the Court did in Demoss and Mayes.
Another factor the Court took into considerations was the fact that in the 7 years that Coates has owned the West Downing property, no homestead exemption was ever filed. Also, while not a major factory, but is noteworthy is the repeated assertions in a lawsuit Coates filed in August 2013, wherein through her counsel, made continued assertions that she lives outside the boundaries of the Cherokee Nation, and in a document filed as recently as May 2014, her counsel again made assertions of this fact by stating “Coates is a citizen of the Cherokee Nation and duly elected and serving Council member of the Cherokee Nation Tribal Council. She is an At-Large Council member who lives in Los Angeles. By Statute enacted by the current council, At-Large candidates are required to live outside the Cherokee Nation Proper.” Coates counsel makes the argument that these are irrelevant for two reasons, first because they were filed before her employment with UCLA ceased on June 30, 2014 and second because they are not verified. In addressing the first argument, the Court is going to look at the circumstances taken as a whole, viewed in conjunction with the 270 day period, just as the Court has done in the previous cases regarding eligibility of a candidate. Second, the Court agrees that the pleadings filed are not verified by Coates, however, counsel set forth those statement as being facts to this Court and attached his signature to those documents. As an officer of the Court, the Court assumes that counsel would not knowingly make misrepresentations in his pleadings to any Court. While the Coates lawsuit did not weigh heavily on the Court’s decision, it is a relevant factor, along with the many other factors the Court considered.
Coates further argues that once her employment ended on June 30, 2014, she returned to Tahlequah and that this fact is evidence of her intent that Tahlequah, Oklahoma is her domicile. Counsel states in his response brief filed April 10, 2015, after June 30, 2014, that Coates was “unemployed in Tahlequah for about three months.” The evidence presented does not support this assertion. Coates’ new lease in Los Angeles was executed on August 23, 2014, therefore the longest period that Coates remained in Tahlequah, was from July 1, 2014-August 23, 2014. Cherokee Nation travel claims show that on August 5, 2014, Coates purchased her plane ticket originating from Los Angeles to Tulsa for the 2014 Cherokee National Holiday, and again a purchase on August 12, 2014, Coates purchased her plane ticket originating from Los Angeles to attend At Large Community meetings for September 2014. This is clear evidence of her intent to return to Los Angles.
A crucial piece of evidence submitted was a video of Coates at an At Large Community Meeting on October 18, 2014, in Anaheim California wherein she spoke to the crowd stating to them:
... And I’m kind of really poignantly aware that this year that as I go around to these annual meetings of the 22 satellite organizations, that it’s the last time that I will be with many of them, in this capacity as your representative. I have been doing almost a swan song type speech in other places, but I’m not going to do that here, because I live in Los *162 Angeles. So I know I will be seeing all of you in all of these organizations in Southern California again and again and again in the year to come and in the years to come after that....
Pursuant to Title 26 CNCA Section 34 1., “Residence is synonymous with the term domicile or abode and means a place where the candidate has a true, fixed and permanent home, and to which whenever absent, the candidate has the intention to return.” The June 28,2013 email clearly establishes that at that moment Coates made a decision to make Los Angeles her domicile, her actions since that time and through the time she filed for her candidacy show that time and time again, while she might travel to Tahlequah to attend tribal activities, while she might have stayed in Tahlequah for 4-6 weeks while she was in between jobs during the summer of 2014, the place she continually returned to, and even though absent she intended to return was Los Angeles, California.
IT THEREFORE THE RULING OF THIS COURT that, after considering all the evidence in the record, evidence presented to the Court, and the arguments made by counsel, including those contained in the briefs, that the decision of the Cherokee Nation Election Commission, entered on March 20, 2015, finding that Julia Coates does not meet the Qualifications to be a Candidate for Deputy Chief in the 2015 Cherokee Nation General Election is hereby AFFIRMED.

. The specific months were not identified on the travel log, but two separate travel reimbursements were made with the transaction dates of December 11 & 12, 2013.

. The specific months were not identified on the travel log, but two separate travel reimbursements were made with the transaction dates of March 12, 2014.

.The specific month was not identified on the travel log but a travel reimbursement was *160 made with the transaction date of June 15, 2014.

. The travel log submitted into evidence only went through December 2014. Coates’ testified at the hearing before this Court that she was basically waiting on the outcome of the hearing before she submitted any further travel claims.